# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

JOHN DAVID KUEHNE, JR.,                    :

        Petitioner,        :        Case No. 3:10cv379
                            Case No. 3:03cr063-1

    vs.                              :
                            District Judge Thomas M. Rose
UNITED STATES OF AMERICA,        :        Magistrate Judge Sharon L. Ovington

        Respondent.        :

## REPORT and RECOMMENDATIONS[1] AND ORDER

This matter is before the Court on *pro se* Petitioner John David Kuehne, Jr.'s motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct sentence (Case No. 3:03cr063, Doc. #326);[2] Respondent's opposing memorandum (Doc. #334); Petitioner's reply (Doc. #341); and the record as a whole. Also before the Court are Kuehne's motions for an evidentiary hearing and for appointment of counsel with respect to his Section 2255 motion. (Doc. ##348, 349).

As a review of the record and the undisputed facts shows conclusively that Petitioner is entitled to no relief, and that neither an evidentiary hearing nor

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

[2]Although not expressly stated, all further docket references will be to the docket number assigned in the <u>criminal</u> case.

appointment of counsel is warranted, the Court recommends that Kuehne's

Section 2255 action be dismissed, and that his motions for evidentiary hearing

and appointment of counsel be denied.

## FACTS, PROCEDURAL HISTORY & THE PARTIES' CLAIMS

On May 27, 2003, a federal grand jury returned a 12-count indictment

against Kuehne, including three counts of using a firearm during and in relation

to a drug-trafficking crime, in violation of 18 U.S.C. § 924(c). (Doc. #11). The

United States Court of Appeals for the Sixth Circuit described the facts

underlying those charges as follows:

> In November of 2002, four individuals, [Fogt, Minaya,
> Nunez and] Kuehne[,] met in Columbus, Ohio and
> discussed an opportunity for the sale of an illegal drug
> popularly known as "ecstacy" at reduced prices. Fogt,
> Kuehne and Minaya were friends and frequently
> purchased and sold ecstacy to one another, with Nunez
> serving as the ultimate supplier. Nunez, who
> alternatively went by "Noonie" or "12 o'clock," was
> from New York City.
>
> During the discussion, Nunez indicated that he was
> interested in obtaining semi-automatic weapons and
> that he was amenable to trading his supply of ecstacy
> for firearms. Kuehne and Fogt agreed to the guns for
> drugs exchange. Later, Kuehne and Fogt traveled back
> to their home in Sidney, Ohio. On the way home, the
> two discussed how they would obtain the guns to
> supply Nunez in exchange for ecstacy. The
> conversation soon turned to Fogt's cousin, Nathan
> Marlow ("Marlow"), who had previously stolen
> firearms without being caught. Marlow was later
> approached by Fogt and agreed to participate. Marlow

then solicited the assistance of his friend, Justin Duckro ("Duckro"), who had a car that could be used during the robberies. Duckro agreed to help, in exchange for half of whatever Marlow received from the robberies.

In early December of 2002, Kuehne and Marlow selected and "cased" their first robbery target, Rich Mart Guns and Ammo. Later, Marlow and Duckro returned to Rich Mart and stole approximately fifty semi-automatic pistols. The guns were then taken to Fogt's house for storage. Thereafter, Kuehne and Fogt traveled to New York to exchange the weapons with Nunez. On the way, Kuehne delivered three guns to Minaya.

Upon meeting with Nunez, Kuehne exchanged thirty semi-automatic pistols for 1,000 pills of ecstacy. Although Kuehne and Fogt agreed to split the pills, Fogt later purchased Kuehne's share. Marlow received 200 pills, some of which were then given to Duckro.

In January of 2003, Kuehne, Marlow and Duckro selected the next robbery target, Craig's Gun Shop in North Lewisburg, Ohio. Marlow and Duckro later robbed the store, taking approximately twenty handguns and more than twelve assault rifles. Again, the weapons were stored at Fogt's house and Kuehne took the guns to New York for exchange with Nunez. Marlow also took a number of weapons and sold them in Tennessee.

In February of 2003, Marlow and Duckro robbed Niekamp's Flea Market in St. Henry, Ohio and stole over 100 semi-automatic pistols. Approximately one-half of the weapons was stored at Fogt's house and the other half was taken to New York. Prior to taking the trip to New York, Kuehne borrowed a car from a friend, Andy Murray, in exchange for money and a gun.

To pay for the trip, Kuehne sold a number of guns in Sidney. Kuehne offered to sell the guns to three

individuals, Robert Hilyard, Fred Hilyard and Jimmy Riggins, who declined.  Eventually Kuehne, Fogt and Marlow made it to New York to barter the firearms with Nunez, and returned to Sidney with approximately 2,000 ecstacy pills.

Between late 2002 and early 2003, Kuehne made several trips to New York City to barter with Nunez.  On one occasion Kuehne took his girlfriend, Lisa Hicks, along for the trip and stayed overnight at Nunez's after taking in the sights in New York.  Upon return from a trip to New York, Duckro notified Kuehne that police had become aware of their activities because individuals had been caught in possession of the stolen weapons.  Soon thereafter, Kuehne was arrested.  While incarcerated at the county jail, Kuehne telephoned his mother regarding digital photographs of him and his girlfriend in New York.  Kuehne "request[ed] her to go and get these two digital disks, and he stated to her that it was very, very important."

*United States v. Kuehne*, 547 F.3d 667, 675-76 (6th Cir. 2008) (citations omitted).

Shortly after the indictment was returned, Kuehne moved to suppress the seizure and subsequent search of his cellular telephone.  (*See* Doc. #50).  That search had revealed the names of several individuals who potentially possessed incriminating information about Kuehne.  *See id.* at 694-95.  Following a hearing on the suppression motion, United States District Judge Thomas M. Rose of this Court issued a written order concluding that the cellular telephone had been improperly seized and searched (Doc. #72), but reserving decision on the suppression remedy "pending an additional hearing to determine if the government [c]ould have obtained the evidence [*i.e.,* the names of potential

witnesses] through an independent source."  *Id.* at 695.

After conducting a second hearing as proposed and reviewing the parties' briefs (*see, e.g.*, Doc. ##92, 94, 119, 126), Judge Rose issued an oral decision on the record, permitting the United States to use the potential witnesses whose names were on Kuehne's telephone because the "government knew of [them] from other sources."  *Id.* at 695.

The case against Kuehne thereafter proceeded to trial.  (*See* Doc. #132).  At the close of evidence, Judge Rose instructed the jury with regard to the Section 924(c) charges.  *Id.* at 680-81.  Although the Court did not provide a separate instruction regarding the elements of the drug trafficking crime that formed the predicate offense for purposes of the Section 924(c) charges against Kuehne, Judge Rose did advise the jury as follows:

> The exchange or barter of MDMA [commonly known as ecstasy] for a firearm or firearms by an unauthorized person necessarily entails an unlawful act of knowingly and intentionally distributing and/or dispensing a controlled substance in violation of 21 U.S.C. § 841(a)(1) which is a drug trafficking crime.

*Id.* at 680-81.   Kuehne's counsel did not object to the instructions.  On October 1, 2004, the jury returned a guilty verdict against Kuehne on the Section 924(c) charges as well as the remaining counts of the indictment.  *Id.* at 676-77; (*see also* Doc. #140).  Kuehne was sentenced and final judgment against him was entered on May 12, 2006.  (Doc. ##255, 256)..

Kuehne appealed his conviction and sentence, raising multiple purported substantive and procedural errors in the proceedings before the district court. Those claims included, *inter alia*, a challenge to this Court's venue, based on New York being the site where Kuehne traded firearms for drugs; a challenge to the jury instructions regarding the Section 924(c) charges, based on the trial court's failure to delineate the elements of the predicate drug offense; a challenge to the trial court's ruling on Kuehne's motion to suppress, based on Judge Rose's issuance of that decision orally rather than in writing; and a challenge to the sufficiency of the indictment, based on the Section 924(c) counts' failure to specify the underlying predicate offense.  The Sixth Circuit considered and rejected each of Kuehne's claims.  *See Kuehne*, 547 F.3d at 677-78, 679-82, 694-95, 695-96.

On October 5, 2009, the United States Supreme Court denied Kuehne's petition for writ of certiorari, putting an end to direct review of the judgment against him.  *See Kuehne v. United States*, ___ U.S. ___, 130 S. Ct. 342 (2009); (*see* Doc. #312).

Petitioner's instant *pro se* 28 U.S.C. § 2255 motion – executed by him on October 3, 2010 (*see* Doc. #326 at 13)[3] and entered on this Court's docket on October 12, 2010 – sets forth the following eight unelaborated grounds for relief:

---

[3]In accordance with "the mail box rule," a *pro se* prisoner's legal filings are "deemed filed on the date . . . turned over to prison officials for transmittal to the court."  *Richard v. Ray*, 290 F.3d 810, 812 (6th Cir. 2002) (citing *Houston v. Lack*, 487 U.S. 266, 270 (1988).  This Court thus deems Kuehne's Section 2255 motion to have been "filed" when executed, on October 3, 2010.

1.    [Petitioner]'s convictions and sentences on Counts 6, 11 and 15 impinge upon fundamental principles of due process and grand jury indictment as said counts (1) fail to charge an offense, or (2) fail to provide real notice of the true nature of the 18 U.S.C. §924(c) offenses charged therein.

2.    The United States' substitution of the underlying predicate drug trafficking crime(s) within Counts 6, 11 and 15 at different stages of [Petitioner]'s federal criminal proceedings - and within separate claims in said proceedings - impinges upon fundamental principles of due process, grand jury indictment and jury trial as said convictions and/or sentences violate fundamental principles of double jeopardy, or in the alternative, venue.

3.    The Sixth Circuit Court of Appeals['] adoption of the United States' newly injected theory that the violations of 18 U.S.C. §924(c) were predicated upon a drug trafficking conspiracy impinges upon fundamental principles of due process, grand jury indictment and jury trial as said theory had previously been waived by the United States in the district court.

4.    [Petitioner] was rendered ineffective assistance of counsel in the district court when counsel failed to challenge Counts 6, 11 and 15 prior to trial which failed to allege or provide a clear understanding of the nature of the offense, i.e., the specific underlying predicate drug trafficking crime(s), as said counts impinge upon numerous constitutional rights guaranteed to [Petitioner].

5.    [Petitioner] was (1) constructively denied counsel, or (2) rendered ineffective assistance of counsel during the plea negotiation process, resulting in

numerous constitutional rights guaranteed to him being impinged upon.

6.     [Petitioner] was rendered ineffective assistance of counsel in both the district and appellate courts when counsel failed to challenge the district court's jury instructions on Counts 6, 11 and 15 which (1) ran contrary to Sixth Circuit precedent when given, United States v. Warwick, 167 F.3d 965 (6th Cir. 1999), and in light of [the] Supreme Court's intervening decision, Watson v. United States, 128 S. Ct. 579 (2007) – as to the first element of 18 U.S. C. §924(c); (2) directed a verdict as to the second element; and/or (3) improperly frame [sic] said counts, i.e., selection of the underlying predicate drug trafficking crime(s), resulting in numerous constitutional rights guaranteed to him being impinged upon.

7.     [Petitioner] was rendered ineffective assistance of counsel in the district court when counsel abandoned his Fourth Amendment claim by (1) failing to challenge the district court's denial of the motion to suppress – subsequent to said court's granting said motion; (2) failing to request specific factual and legal findings thereon; and (3) failing to request resolution of all issues relating to [the] United States' witnesses prior to trial, resulting in numerous constitutional rights guaranteed to him being impinged upon, and thereby unavailable to be appealed.

8.     [Petitioner]'s federal criminal proceedings held in both the district and appellate courts did not meet the rudimentary demands of fair procedure as it relates to Counts 6, 11 and 15, and/or the defects in the proceedings relevant to his convictions and sentences on said counts are so fundamental as to constitute a miscarriage of justice.

(Doc. #326-1 at 3-5).

On November 29, 2011, the United States filed its response in opposition to Petitioner's Section 2255 motion. (Doc. #334). Respondent first argues that Petitioner previously presented the appellate court with his claim that the indictment against him failed to allege a crime or to notify him of the charges against him, and thus may not relitigate that claim on a Section 2255 motion. (*Id.* at 9-10). Next, Respondent contends that Petitioner's claim regarding the predicate drug offenses underlying his Section 924(c) charges "is simply an amalgam of" arguments already presented to and rejected by the Sixth Circuit Court of Appeals, which also cannot be relitigated in this action. (*Id.* at 10-12). In addition, to the extent that any portion of that claim was not previously presented to the appellate court, Respondent maintains that Petitioner has procedurally defaulted any such new theory. (*Id.* at 12).

In response to Petitioner's request that he be given additional time to file a reply (Doc. #337), the Court granted Petitioner the requested extension to January 15, 2011, for that purpose. Petitioner in fact did not file his reply until February 2, 2011. (Doc. #341). Instead of responding directly to Respondent's opposing arguments, Petitioner's 50-page reply outlines six grounds for relief (rather than the eight set forth in his Section 2255 motion), and offers arguments in support of those six newly-configured grounds. (Doc. #341). Although such grounds

overlap significantly with the eight grounds set forth in cursory fashion in his original motion, Petitioner's reply also expands on the bases for his Section 2255 challenges.  For example, Petitioner now suggests that he would have pled guilty to the charges against him had his trial counsel provided effective assistance with respect to explaining his sentencing exposure and negotiating a plea.  (*See* Doc. #341 at 28).  In his reply, then, Petitioner for the first time attempts to raise grounds for relief that would rely on evidence (*i.e.*, private communications with trial counsel) that does not appear in the record before this Court.

Also on February 2, 2011, Petitioner filed a motion asking the Court to direct the United States to comply with Rule 5(b) of the Rules Governing Section 2255 Proceedings.  (Doc. #340).  In that document, Petitioner contends that the United States' answer "failed to address th[e] six specific issues" in Petitioner's "amended" Section 2255 motion.  (*Id.* at 2).  In a subsequent motion requesting the same relief, Petitioner claims to have "amended" his Section 2255 motion by "[a]ttach[ing] to his motion for an extension of time" (*see* Doc. #331) "a clarified list of issues that he intended to bring in this § 2255 proceeding."  (Doc. #345 at 2).  In denying those motions (Doc. ##340, 345), the Court declined to compel the United States to file an additional response, and briefly commented on Petitioner's claim to have "amended" his Section 2255 motion, as follows:

> The Court first observes that inserting "a clarified list of
> issues" into a motion for extension of time is not a

> proper procedure for amending a pleading.  *See* Fed. R.
> Civ. P. 15(a).  Absent any formal attempt to amend
> Petitioner's Section 2255 petition in this case,
> Respondent had no reason to anticipate that it would be
> expected to respond to issues delineated only in an
> attachment to Petitioner's motion to modify the
> scheduling order.  (*See* Doc. #331, Exh. A).
> Additionally, any such attempted late amendment may
> implicate statute of limitations issues.

(Doc. #350 at 5).

On May 31, 2011, Kuehne filed a motion requesting both a evidentiary

hearing and appointment of counsel.  (Doc. ##348, 349).  He suggests that an

evidentiary hearing is necessary due to "numerous factual disputes between the

United States and Kuehne," as well as to develop the record regarding his

ineffective assistance of counsel claims.  (*Id.*).

These matters now are ripe for decision.

## APPLICABLE LAW

### 28 U.S.C. § 2255

A federal prisoner who claims that his sentence was imposed in violation

of the Constitution or laws of the United States or "is otherwise subject to

collateral attack" may move the sentencing court to vacate, set aside or correct his

sentence.  28 U.S.C. § 2255(a).  A one year limitations period applies to such

actions.  28 U.S.C. § 2255(f).  Unless the record "conclusively show[s] that the

prisoner is entitled to no relief," the court is to hold a hearing, determine the

issues, and make findings of fact and conclusions of law.  28 U.S.C. § 2255(b).

      If a Section 2255 motion is not dismissed, "the judge must review the answer, any transcripts and records of prior proceedings, and any materials submitted . . . to determine whether an evidentiary hearing is warranted."  Rules Governing § 2255 Proceedings, Rule 5(a); *see also Ross v. United States*, 339 F.3d 483, 490-91 (6th Cir. 2003).  Where a factual dispute exists, "the habeas court <u>must</u> hold an evidentiary hearing to determine the truth of the petitioner's claims." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (emphasis added) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999), *cert. denied*, 528 U.S. 1195 (2000)), *cert. denied*, 552 U.S. 1217 (2008); *see also Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) ("An evidentiary hearing is required unless the record conclusively shows that the petitioner is entitled to no relief.").

      "[T]he burden on the petitioner in a *habeas* case for establishing an entitlement to an evidentiary hearing is relatively light."  *Valentine*, 488 F.3d at 333 (citing *Turner, supra*); *see also Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003).  However, the district court need not conduct an extensive evidentiary hearing in every instance.  *See Wright v. United States*, 320 F. App'x 421, 427 (6th Cir. 2009).  "Rather, the hearing conducted by the court, if any, must be tailored to the specific needs of the case, with due regard for the origin and complexity of the issues of fact and the thoroughness of the record on which (or perhaps,

against which) the section 2255 motion is made." *Id.* (parenthetical in original) (citing *Smith*, 348 F.3d at 550-51). Accordingly, the reviewing court is to determine what material issues of fact require resolution via an evidentiary hearing.

In most Section 2255 proceedings, "the court may appoint counsel" to represent the petitioner. 28 U.S.C. § 2255(g). "If an evidentiary hearing is warranted," however, "the judge <u>must</u> appoint an attorney to represent a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A." Rules Governing § 2255 Proceedings, Rule 5(c) (emphasis added). Any hearing determined to be necessary shall be held "as soon as practicable after giving the attorneys adequate time to investigate and prepare." *Id.*

### Procedural Default

The provisions of Section 2255 notwithstanding, claims not first raised on direct appeal generally "may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003) (citing *United States v. Frady*, 456 U.S. 152, 167-68 (1982); *Bousley v. United States*, 523 U.S. 614, 621-22 (1998)). Although that "procedural-default rule" is not a statutory or constitutional requirement, "it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Id.*

The Supreme Court nonetheless has found "that requiring a criminal defendant to bring ineffective-assistance-of-counsel claims on direct appeal does not promote these objectives." *Id.*  As a result, that Court has held that "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Id.*; *see also United States v. Sanders*, 404 F.3d 980, 986 (6th Cir. 2005) ("as a general rule, a defendant may not raise ineffective assistance of counsel claims for the first time on direct appeal, since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations") (quoting *United States v. Crowe*, 291 F.3d 884, 886 (6th Cir.2002)); *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir.1990).  Accordingly, "in most cases a motion brought under [28 U.S.C.] § 2255 is preferable to direct appeal for deciding claims of ineffective assistance." *Massaro*, 538 U.S. at 504.  Federal prisoners who wish to pursue claims for ineffective assistance of counsel thus usually "should do so by way of a collateral proceeding pursuant to 28 U.S.C. § 2255." *Sanders*, 404 F.3d at 986.

## Right to Effective Assistance of Counsel

The "Assistance of Counsel" guaranteed by the Sixth Amendment presumes that a criminal defendant has "the right to the <u>effective</u> assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (emphasis added)

(quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).  To establish a claim of ineffective assistance of trial counsel, a criminal defendant must make a two-part showing:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687; *see also O'Hara v. Brigano*, 499 F.3d 492, 505 (6th Cir. 2007).  To satisfy the prejudice prong, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.

Overall, the constitutional standard for adequate representation is "an objective standard of reasonableness" in line with "prevailing professional norms." *Strickland*, 466 U.S. at 687-88.  Counsel's performance also should be evaluated in light of the totality of the circumstances.  *See id.* at 690; *Mason v. Mitchell*, 320 F.3d 604, 618 (6th Cir. 2003).

The *Strickland* standard applies not only to counsel's performance during trial, but also in the context of representation provided during plea hearings, with the second prong focusing on "whether counsel's constitutionally

ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *see Dando v. Yukins*, 461 F.3d 791, 798 (6th Cir. 2006). With respect to claimed deficiencies in representation as to a criminal defendant's sentence, the same *Strickland* factors apply: *i.e.*, the petitioner must show both that his counsel's performance fell below an objective standard of reasonableness, and that absent such shortcoming, the outcome likely would have been different. *See Glover v. United States*, 531 U.S. 198, 204 (2001); *Green v. United States*, 65 F.3d 546 (6th Cir. 1995), *cert. denied*, 516 U.S. 1098 (1996).

A defendant's failure to satisfy either prong of the *Strickland* test obviates the need for the court to consider the other prong. *See Strickland*, 466 U.S. at 697; *see also Stanford v. Parker*, 266 F.3d 442, 454 (6th Cir. 2001), *cert. denied*, 537 U.S. 831 (2002).

## ANALYSIS

### Scope of Kuehne's Section 2255 Motion

As noted in the procedural history recited *supra*, Petitioner's Section 2255 motion as originally filed contains eight concise grounds for relief. (*See* Doc. #326-1 at 3-5). His February 2, 2011 reply, however, sets out <u>six</u> grounds for relief

that overlap with but do not correspond identically to those articulated in his original motion, accompanied by arguments that in some instances expand on the grounds stated in his original motion, but in other instances introduce wholly new factual allegations.  (*See* Doc. #341).

Kuehne suggests in still other filings that he "amended" his original Section 2255 motion by "[a]ttach[ing] to his motion for an extension of time" filed on November 2, 2010 (*see* Doc. #331), "a clarified list of issues that he intended to bring in this § 2255 proceeding."  (Doc. #340 at 2; Doc. #345 at 2).  Because this Court's original scheduling order did not provide for a sur-reply by the United States (*see* Doc. #327), Respondent has had no opportunity to respond to the arguments raised in Petitioner's reply.  Before proceeding to consider Petitioner's Section 2255 claims, then, the Court first must determine precisely what "claims" are properly before this Court.

Given their nature as civil proceedings, Section 2255 motions are subject to the Federal Rules of Civil Procedure.  *United States v. Quinlan*, Nos. 08-CV-14985, 01-CR-80514, 2009 WL 2351776, at *3 (E.D. Mich. July 19, 2009) (citing *Bowdidge v. Lehman*, 252 F.2d 366, 368 (6th Cir.1958)).  As such, Fed. R. Civ. P. 15's provisions for amendment of pleadings apply to Section 2255 motions.  *Id.* (citing *Anderson v. United States*, 39 F. App'x 132, 136 (6th Cir. 2002)).[4]  Under the version of that

---

[4]"A motion to vacate may be amended or supplemented in accordance with Fed. R. Civ. P. 15."  *Anderson*, 39 F. App'x at 136.

Rule in effect on the dates relevant to this case, a party may amend a pleading either "once as a matter of course" within 21 days after a responsive pleading is filed, Fed. R. Civ. P. 15(a)(1), or must obtain the opposing party's written consent or leave of court. Fed. R. Civ. P. 15(a)(2). Moreover, even a properly amended pleading is subject to the applicable statute of limitations, and may be time barred unless the claims asserted in the amendment "relate back" to those in the original pleading. Fed. R. Civ. P. 15(c); *see Anderson*, 39 F. App'x at 136.

Because Petitioner filed his reply more than two months after Respondent already had filed its answer (*see* Doc. ## 334, 341), that reply – even had it been presented as an "amendment" to Kuehne's original motion[5] – cannot suffice to amend Petitioner's Section 2255 motion "as a matter of course." *See* Fed. R. Civ. P. 15(a)(1). Similarly, although filed before Respondent's answer, Kuehne's "Motion for Modification of Scheduling Order" (Doc. #331) that he now claims served to "amend" his Section 2255 allegations (*see* Doc. #340 at 2; Doc. #345 at 2) gave neither the United States nor this Court any reason to believe that such filing was intended to alter the very grounds for Kuehne's cause of action, nor did it articulate the factual bases for those claims. Accordingly, Petitioner's original Section 2255 motion was amenable to amendment only with the United States' written consent or leave of this Court. *See* Fed. R. Civ. P. 15(a)(2).

_____

[5]The Court notes that Kuehne titled such document as his "Reply" and gave no indication that it instead was intended as an amended Section 2255 motion. (*See* Doc. #341).

The docket shows that Petitioner in his matter never sought leave to amend his original Section 2255 motion.  Neither did the United States enter written consent to such an amendment, nor this Court grant Petitioner leave to do so.  Moreover, despite the latitude ordinarily afforded *pro se* parties, *see, e.g., Jourdan v. Jabe*, 951 F.2d 108, 109 (6th Cir. 1991),[6] the Court finds that many other reasons also dictate <u>against</u> treating Kuehne's reply as an amendment to his original Section 2255 motion.

First, Petitioner's reply itself was untimely.  Although the extension to January 15, 2011 granted by the Court gave Kuehne all the time he requested (*see* Doc. #337), Kuehne did not file his reply until February 2, 2011.  (*See* Doc. #341).  Courts are not required to consider such untimely filings.  *See, e.g., Ohio Oil Gathering Corp. III v. Welding, Inc.*, No. 2:09-cv-782, 2010 WL 5135999, at *2 (S.D. Ohio Dec. 9, 2010) (Frost, J.); *Estes v. Harris*, 512 F. Supp. 1106, 1109 (S.D. Ohio 1981) (Rice, J.).  Additionally, courts also are not required to consider matters first raised in a reply brief.  *See, e.g., Wright v. Holbrook*, 794 F.2d 1152, 1156 (6th Cir. 1986); *Boothe v. Comm'r of Soc. Sec.*, No. 1:06-CV-00784, 2008 WL 281621, at *8 n.1 (S.D. Ohio Jan. 31, 2008) (Spiegel, J.).  Kuehne's reply clearly introduces new allegations not included in his original motion.  (*See* Doc. ##326, 341).

---

[6]"[W]hile *pro se* litigants may be entitled to some latitude when dealing with sophisticated legal issues . . ., there is no cause for extending this margin to straightforward procedural requirements . . ." *Id.*

Finally, and most significantly, among the valid reasons for denying even a properly-presented motion for leave to amend a pleading is the "futility" of the proposed amendment. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Miller v. Calhoun County*, 408 F.3d 803, 817 (6th Cir. 2005). Amending a filing in order to add claims that would be barred by the applicable statute of limitations would be futile. *Marx v. Centran Corp.*, 747 F.2d 1536, 1551 (6th Cir. 1984), *cert. denied*, 471 U.S. 1125 (1985); *Prebble v. Hinson*, 825 F. Supp. 185, 186-87 (S.D. Ohio 1993) (Rubin, J.). Here, the Court finds that any attempt to amend Petitioner's Section 2255 motion through the factual allegations newly introduced in his reply would be futile because such new claims are time-barred.

"A 1-year period of limitation shall apply to a motion" under Section 2255. 28 U.S.C. § 2255(f). That limitation period "shall run from the latest of"

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through

the exercise of due diligence.

*Id.*

"[A] conviction becomes final for purposes of collateral attack at the conclusion of direct review." *United States v. Cottage*, 307 F.3d 494, 498 (6th Cir. 2002) (citing *Johnson v. United States*, 246 F.3d 655, 657 (6th Cir. 2001)). "If a § 2255 movant pursued his direct appeal through to a petition for certiorari in the Supreme Court, direct review is concluded when the Supreme Court either denies the petition or decides the case." *Id.*

In Kuehne's case, the United States Supreme Court denied his petition for writ of certiorari on October 16, 2009. *See Kuehne v. United States*, ___ U.S. ___, 130 S. Ct. 342 (2009); (*see* Doc. #312). Accordingly, the one-year limitations period applicable to Kuehne's Section 2255 motion presumably would expire one year after that date, on October 16, 2010. *See* 28 U.S.C. § 2255(f)(1).[7]

Kuehne filed his Section 2255 motion on October 3, 2010,[8] just under the statutory deadline. (*See* Doc. #326).[9] His reply, however, was not filed until

---

[7] Kuehne has presented nothing to suggest that any of the statute's alternative provisions apply here to extend that limitations period, nor does the Court find them to apply. *See* 28 U.S.C. § 2255(f)(2), (3), and (4).

[8] *See* n.3, *supra*.

[9] Indeed, Petitioner himself clearly was well aware of that looming deadline, as he requested many times that this Court "stay" the statute of limitations applicable to his Section 2255 motion. (*See* Doc. ##321, 322, 323, 324, 325, 328, 329, 332, 336). Those requests were denied. (*See* Doc. ##330, 350).

February 2, 2011 (*see* Doc. #341), well after the one-year statute of limitations for

Section 2255 actions had run.  Claims presented in filings intended to supplement

a Section 2255 motion but filed after the statute of limitations has run generally

are timed barred.  *See Evans v. United States*, 284 F. App'x 304, 313 (6th Cir. 2008);

*see also Quinlan*, 2009 WL 2351776, at *3 ("[A]mendments [to pleadings] asserting

new claims based on different facts do not relate back to the original pleadings

and therefore do not 'escape the one-year time limit.'").  In *Evans*, the petitioner

filed a supplemental petition in which he first raised a claim that "his trial

attorney gave him incorrect advice regarding what sentence he would receive

through a plea agreement versus trial."  284 F. App'x at 313.  Noting that

petitioner Evan filed his supplemental petition "more than one year after his

conviction became final," the Sixth Circuit found that Evan's ineffective

assistance claim did not "relate back" to his timely original petition, and thus was

time barred.  *Id.*

The nearly identical circumstances presented here warrant the same result.

Although Kuehne's timely original Section 2255 motion did assert a perfunctory

claim of ineffective assistance of counsel relative to plea negotiations, that bare-

bones assertion was completely devoid of factual support or explanation.  (*See*

Doc. #326-1 at 4).  In accordance with the Rules Governing Section 2255

Proceedings, Section 2255 movants are required to set forth specific factual details

in support of all grounds for relief, *see* Rule 2(b)(2) of Rules Governing Section 2255 Proceedings, including as to ineffective assistance of counsel claims.  *See United States v. Walker*, 210 F.3d 373 [table], 2000 WL 353518, at *5 (6th Cir. 2000). Without question, the facts Kuehne now advances as underlying the claim that his trial and appellate attorneys performed deficiently with respect to pre-trial plea negotiations were known to Petitioner before he filed his original Section 2255 motion.  His failure to comply with Rule 2(b)(2) by incorporating such facts into his timely original motion thus cannot be excused pursuant to 28 U.S.C. § 2255(f)(4), and such allegations are subject to Section 2255(f)'s one-year statute of limitations.  Kuehne's belated attempt to resurrect a claim based on those allegations via his reply posing as an unauthorized and untimely "amendment" of his motion cannot succeed.  *See Bender v. United States*, 372 F. App'x 638, 643 (6th Cir. 2010) (affirming denial of motion to amend § 2255 motion where petitioner offered "no explanation why he could not have asserted the newly asserted performance deficiencies in the original § 2255 motion").  Additionally, even were this Court to recognize the list attached to Petitioner's motion to modify the scheduling order (*see* Doc. #331 at 6-8) as a valid attempt to amend his Section 2255 motion, that purported "amendment," too, was filed only after the one year limitations period had expired, and also omitted the facts now asserted in his reply.  (*See id.*).

For all of the foregoing reasons, this Court concludes that neither the six-grounds list of claims attached to Kuehne's motion to modify the scheduling order (*see* Doc. #331 at 6-8; Doc. #340 at 2; Doc. #345 at 2) nor his reply (Doc. #341) serves to "amend" his original Section 2255 motion filed in this matter (Doc. #326), and that only the grounds articulated in that original motion are properly before this Court for consideration. However, to the extent that any arguments contained within the reply may "relate back" to that original motion, *see* Fed. R. Civ. P. 15(c), the Court hereafter will consider those arguments in the context of each of the grounds set forth in Kuehne's original motion.

## **Ground One**

In his first articulated ground for relief, Kuehne argues that Counts 1, 6, and 11 of the indictment against him failed to charge an offense or to provide "real notice of the true nature" of the 18 U.S.C. § 924(c) offenses with which he was charged. (Doc. #326-1 at 3). The Sixth Circuit previously addressed the substance of this claim. In considering the sufficiency of the indictment, the Sixth Circuit held:

> [T]he indictment properly gave Kuehne notice of the charges he would be facing at trial. Moreover, the indictment was sufficiently specific so as to provide protection against double jeopardy inasmuch as the counts specified particular dates on which the offenses occurred and the type of drugs which were involved in each transaction (i.e., ecstasy).

*Kuehne,* 547 F.3d at 696.

Absent exceptional circumstances, "[a] § 2255 motion may not be used to relitigate an issue that was raised on [direct] appeal." *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996); *see also Sawyers v. United States*, 985 F.2d 561 [table], 1993 WL 20155, at *1 (6th Cir.) (concluding that the district court properly denied a Section 2255 motion because "an issue previously decided on direct appeal cannot be a basis for a collateral attack on a conviction absent a change in the prevailing legal standards"), *cert. denied*, 508 U.S. 967 (1993).

Here, Petitioner has not identified any intervening change of law that would affect the validity of the circuit court's prior decision on this issue. Because this ground for relief simply reasserts a claim already considered and rejected by the Sixth Circuit on direct appeal, Kuehne may not relitigate that issue via a Section 2255 motion. *See DuPont*, 76 F.3d at 110; *Sawyers*, 1993 WL 20155, at *1. His claim for relief based on the alleged insufficiency of the indictment thus is not properly before this Court, and should be denied.

## Ground Two

Kuehne's second ground for relief alleges that the United States at various times interchanged the predicate drug trafficking crimes claimed to underlie Counts 6, 11, and 15, resulting in his convictions and/or sentences violating such "fundamental" principles as due process, the right to grand jury indictment, the

prohibition on double jeopardy, and venue requirements. (Doc. #326-1 at 3; *see also* Doc. #341 at 16-24). As quoted *supra*, however, the Sixth Circuit explicitly held the indictment was sufficient to protect Kuehne from double jeopardy. *Kuehne*, 547 F.3d at 696. Likewise, the appellate court previously addressed Kuehne's contentions with regard to venue, determining that "there was sufficient evidence to support a finding that venue was proper in the Southern District of Ohio inasmuch as the gun robberies and drug exchanges took place in Ohio." *Id.* at 677.

　　To the extent that any remaining constitutional implications invoked by Kuehne's second ground were not addressed directly in the Sixth Circuit's decision (*e.g.*, as a due process violation), the United States urges that such claims are "simply an amalgam" of arguments previously rejected on direct appeal and thus not subject to relitigation here, <u>or</u> were procedurally defaulted as a consequence of Petitioner's failure to raise them on direct appeal. (Doc. #334 at 11-12). This Court concurs in the government's assessment. Once again, then, Kuehne's assertion of a Section 2255 claim on this basis represents merely an improper attempt to relitigate issues disposed of on direct appeal, *see DuPont*, 76 F.3d at 110; *Sawyer*, 1993 WL 20155, at *1, or alternatively, seeks review of issues procedurally defaulted due to their omission on direct appeal. As Plaintiff has not shown cause for or prejudice from any such omission, *see Massaro*, 538 U.S. at

504; *Bousley*, 523 U.S. at 621-22, Petitioner's second ground, too, should be denied in its entirety.

### Ground Three

Third, Petitioner asserts that the Sixth Circuit erroneously adopted the government's "newly injected theory" that his 18 U.S.C. § 924(c) violations were predicated upon a drug trafficking conspiracy, suggesting that the United States waived that theory by not raising it sooner.  (Doc. #326-1 at 3; *see also* Doc. #341 at 22-24).  As that claim acknowledges on its face, however, that "newly injected theory" was before the Sixth Circuit when it considered Kuehne's direct appeal challenge regarding the underlying predicate drug offenses, and that Court determined that Kuehne was not prejudiced by the erroneous jury instructions regarding that element because the evidence of a conspiracy to distribute ecstacy – *i.e.*, a predicate drug offense – was both overwhelming and uncontradicted.  *See Kuehne*, 547 F.3d at 682.

Ironically, Petitioner's own freshly-introduced contention that the United States "waived" relying on a drug trafficking conspiracy as a predicate offense by failing to raise that argument in the trial court (*see* Doc. #336 at 3) is itself not properly before the Court.  Because neither Kuehne nor his trial attorney objected to the trial court's jury instructions, the United States lacked notice of any need to further delineate the predicate offense instruction at that time.  Moreover, by

failing to raise the United States's purported waiver on his direct appeal,
Petitioner himself committed a procedural default and thus waived that issue.
Kuehne therefore is not entitled to relief under Section 2255 for the claims asserted
in his third ground.  *See Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001).

### Ground Four

In Kuehne's fourth claim, he alleges that his counsel was ineffective for
failing to challenge Counts 6, 11, and 15 of the indictment prior to trial.  (Doc.
#326-1 at 4; *see also* Doc. #341 at 4-15).  In effect, this claim simply adds an
ineffective assistance of counsel layer to Petitioner's ground one allegation.  (*See
id.* at 3).

Again, the Court notes that on direct appeal, the Sixth Circuit rejected
Petitioner's identical challenge to the sufficiency of the indictment.  *Kuehne,* 547
F.3d at 696.  In light of the appellate court's determination that the indictment was
not legally deficient, Petitioner's trial counsel also cannot have performed
deficiently by failing to raise an objection on that basis.  *See Strickland*, 466 U.S. at
687; *O'Hara*, 499 F.3d at 505.  Even though a Section 2255 motion generally is
preferable to direct appeal for deciding ineffective assistance claims, *see Massaro*,
538 U.S. at 504, *Sanders*, 404 F.3d at 986, a federal prisoner challenging his
conviction still "cannot use a § 2255 proceeding, in the guise of ineffective
assistance of counsel, to relitigate issues decided adversely [to] him on direct

appeal." *Paull v. United States*, Nos. 1:10 CV 2060, 1:05 CR 246, 2011 WL 2494114, at *2 (N.D. Ohio June 22, 2011) (quoting *Clemons v. United States*, Nos. 3:01-CV-496, 3:97-CR-16, 2005 WL 2416995, at *2 (E.D. Tenn. Sept. 30, 2005) (citing *DuPont*, 76 F.3d at 110)).  Accordingly, Petitioner's ineffective assistance counsel claim premised on the alleged insufficiency of the indictment should be denied.

### Ground Five

The fifth ground raised in Kuehne's motion contends that during the plea negotiations, he either was "constructively denied counsel" or "rendered ineffective assistance of counsel."  (Doc. #326-1 at 4; *see also* Doc. #341 at 28-33). Beyond that conclusory allegation, Petitioner's original motion identifies nothing that his attorney allegedly did or failed to do that resulted in any prejudice to him. (*Id.*).  Petitioner's reply, however, introduces new matters, including an allegation that Kuehne probably would have entered a guilty plea "but for" trial counsel's "deficient performance."  (Doc. #341 at 28).  Kuehne also suggests that an evidentiary hearing is necessary as to these allegations involving "off-the-record interactions with his trial counsel."  (*Id.* at 32).

Section 2255 movants are required to set forth specific factual details in support of all grounds for relief, including ineffective assistance of counsel claims. *See* Rule 2(b)(2) of Rules Governing Section 2255 Proceedings; *see also United States v. Walker*, 210 F.3d 373 [table], 2000 WL 353518, at *5 (6th Cir. 2000).  Where the

petitioner's allegations are merely conclusory, no hearing is necessary.  *See Huntley v. United States*, Nos. 4:07-cv-56, 4:06-cr-8, 2008 WL 488024, at *3 (E.D. Tenn. Feb. 19, 2008) ("No hearing is required in a section 2255 proceeding if . . . the allegations in the motion are unreasonably vague, conclusory, or incredible . . .") (quoting *Oliver v. United States*, 961 F.2d 1339, 1343 n.5 (7th Cir. 1992)).  Indeed, the United States suggests in its opposing memorandum that a Section 2255 motion such as Petitioner's that fails to "set forth some facts in support of each claimed ground for relief" is fatally defective (Doc. #334 at 16), and "may be dismissed if it contains only vague or conclusory allegations."  *Id.* (quoting *Belloso-Ibarra v. United States*, No. 09 Civ. 8216(SAS), 2010 WL 431904, at *3 (S.D.N.Y. Feb. 8, 2010)).

As Respondent accurately observes, Petitioner's motion in this case "is devoid of a single factual allegation supporting" his bald assertion that he received ineffective assistance of counsel or was constructively denied counsel during plea negotiations.  (Doc. #334 at 16; *see* Doc. #326-1 at 4).  A multitude of case law from various circuits supports the proposition that vague or conclusory allegations devoid of factual support will not sustain a motion under Section 2255.  *See, e.g., Oliver*, 961 F.2d at 1343 n.5; *Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989); *United States v. Aiello*, 814 F.2d 109, 113-14 (2nd Cir. 1987); *United States v. Unger*, 635 F.2d 688, 691 (8th Cir. 1980).  Because Kuehne's claim on this basis lacks

any factual substantiation, such claim may be denied without the need for a hearing.  *See Belloso-Ibarra*, 2010 WL 431904, at *3.

## **Ground Six**

Petitioner's sixth claim for relief argues that both his trial and appellate counsel were ineffective for failing to challenge the jury instructions given by the trial court.  (Doc. #326-1 at 4; *see also* Doc. #341 at 34-42).  Citing *Watson v. United States*, 552 U.S. 74 (2007), and *United States v. Warwick*, 167 F.3d 965 (6th Cir. 1999), Kuehne first asserts that his counsel should have argued that trading firearms for drugs does not constitute "use" within the meaning of 18 U.S.C. § 924(c).  (Doc. #326-1 at 4; *see also* Doc. #341 at 34-37).

As the Sixth Circuit made clear on direct appeal, however, Kuehne's reliance on the *Watson* and *Warwick* cases is misplaced.  Although the Supreme Court in *Watson* concluded that trading <u>drugs</u> <u>for</u> a <u>firearm</u> does <u>not</u> constitute "<u>use</u>" for purposes of 18 U.S.C. § 924(c), *see* 552 U.S. at 76, the high court left undisturbed its prior holding [in *Smith v. United States*, 508 U.S. 223, 241 (1993)] "that a person who barters a <u>gun</u> in exchange <u>for</u> <u>drugs</u> can be said to have '<u>used</u>' the gun."  *Kuehne*, 547 F.3d at 679 (citing *Watson*, 552 U.S. at 82-83) (emphasis added).  Indeed, as the Sixth Circuit further noted:

> On three occasions, the Supreme Court has expounded
> on the word "use" within the meaning of § 924(c)(1) and
> on each of those occasions Kuehne's contention that an
> individual who barters firearms for drugs does not "use"

such firearms was expressly rejected.

*Kuehne*, 547 F.3d at 678-79 (citing *Watson*, 552 U.S. 74; *Bailey v. United States*, 516 U.S. 137 (1995); *Smith v. United States*, 508 U.S. 223 (1993)).  In light of that unequivocal precedent, neither Petitioner's appellate counsel nor his trial attorney could be deemed ineffective for failing to argue that Kuehne he did not "use" a firearm within the meaning of Section § 924(c) by trading guns for drugs.

Kuehne also argues that his appellate counsel was ineffective for failing to challenge on appeal the trial court's jury instructions as to the Section 924(c) charge -- namely its failure to specify the predicate drug offense as well as its inclusion of certain admonitions to the jury.  (Doc. #326-1 at 4).  The record reflects, however, that Petitioner's attorney on appeal <u>did</u> argue that the district court erred by failing to give a separate instruction regarding the elements of the drug trafficking crime that formed the predicate offense for the Section 924(c) charges against Kuehne.  *See Kuehne*, 547 F.3d at 681.  Despite that argument, the appellate court found that the district court's error in failing to delineate the elements of the underlying drug offense was harmless beyond a reasonable doubt, given the "uncontroverted evidence supporting the predicate drug offenses."  *Id.* at 681-82.

In light of the Sixth Circuit's prior finding that "Kuehne was not prejudiced by the omission" of a jury instruction regarding the predicate offenses, *see id*. at

682, Petitioner also cannot establish the prejudice prong necessary to state a claim for ineffective assistance of counsel under the *Strickland* test.  *See* 466 U.S. at 687. As such, Kuehne's Section 2255 claim based on his counsel's alleged ineffectiveness with respect to the jury instructions also must be denied.

### Ground Seven

In yet another effort to return to issues already addressed before the Sixth Circuit, Kuehne again raises objections based on the result of the suppression hearing in his case.  (*See* Doc. #326-1 at 5; *see also* Doc. #341 at 25-26).  Specifically, Kuehne alleges that his attorney was ineffective for failing to request "specific legal and factual findings" concerning the suppression motion, or for failing to ask the Court to reconsider that decision.  (*Id.*).  The undisputed record, however, belies Kuehne's claims.

In order to establish deficient performance, a defendant must present facts that show his "counsel's representation fell below an objective standard of reasonableness."  *Eley v. Bagley*, 604 F.3d 958, 968 (6th Cir.), *cert. denied*, ___ U.S. ___, 131 S. Ct. 822 (2010).  Here, Kuehne's counsel succeeded in convincing the trial judge that the search and seizure of Kuehne's cellular telephone had been improper.  Although the Court ultimately allowed the United States to use potential witnesses divulged through that improper search because the government "knew of [those witnesses] from other sources," *Kuehne*, 547 F.3d at

695, Kuehne's trial counsel zealously advocated for a more favorable result.  (*See, e.g.*, Doc. ##86, 94, 119, 126).  Defense counsel's failure to persuade the trial court to accept Kuehne's position does not equate to deficient performance, and his failure to file a motion for reconsideration does not change that result.[10]

Additionally, Kuehne's counsel was not deficient for failing to challenge the purported lack of factual or legal findings concerning the suppression issue.  On direct appeal, the Sixth Circuit found Kuehne's argument concerning the district court's failure to make factual and legal findings concerning the suppression motion to be "without merit."  *Id.*  That Court emphasized that the trial judge's later oral ruling "regarding the scope of the [written] order [on the suppression motion]" comported with Fed. R. Crim. P. 12.  *Id.*  As the Sixth Circuit aptly noted, although Rule 12 requires a district court to "state its essential findings on the record," that Rule does not specify a particular manner for doing so – *i.e.*, in writing or orally.  *Id.*  The Sixth Circuit concluded that, in this case, the transcribed oral ruling satisfied Rule 12's mandate.  *Id.*  Kuehne's counsel thus was not deficient for failing to object to purported deficiencies in the district court's suppression ruling.

**Ground Eight**

---

[10]On appeal, neither Mr. Kuehne in his *pro se* brief nor his appellate counsel challenged the propriety of the district court's ultimate suppression ruling.  *See Kuehne*, 547 F.3d at 694 n.11 (noting that "Kuehne does not, however, challenge the district court's ultimate denial of his motion to suppress evidence").

Finally, Petitioner's eighth and last claim consists of a catch-all ground alleging that prior proceedings concerning the Section 924(c) counts against him "did not meet the rudimentary demands of fair procedure." (*See* Doc. #326-1 at 5; *see also* Doc. #341 at 43-46). Respondent accurately characterizes this final claim as merely a "recapitulat[ion]" of Kuehne's continued insistence that he was unfairly prejudiced by the indictment's and the jury instructions' omission of an explicit enumeration of the predicate drug offenses underlying the Section 924(c) counts. (*See* Doc. #334 at 22). Once again, however, the record reflects that Kuehne's appellate counsel raised and the appellate court rejected various arguments challenging those jury instructions. Petitioner's dissatisfaction with that result does not render those proceedings unfair. This claim, too, should be denied, as both redundant and without merit.

## Motions for Evidentiary Hearing/Appointment of Counsel

Also before the Court is Kuehne's motion requesting both a evidentiary hearing and appointment of counsel, pursuant to 28 U.S.C. § 2255(b) and (g). (Doc. ##348, 349). An evidentiary hearing is unwarranted where the record "conclusively show[s] that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The same is true as to requests for appointed counsel. *See, e.g., Woods v. United States*, 104 F.3d 361 [table], 1196 WL 733127, at *3 (6th Cir. 1996) (denying request for appointment of counsel where no meritorious Section 2255 claim

before the court); *Hale v. United States*, 955 F.2d 44 [table], 1992 WL 25025, at **1-2 (6th Cir. 1992) (same); *Brady v. United States*, 943 F.2d 51 [table], 1991 WL 180223, at *1 (6th Cir. 1991) (same).

Although Petitioner suggests that an evidentiary hearing is necessary due to "numerous factual disputes between the United States and Kuehne" (Doc. #348 at 11), the Court's foregoing analysis demonstrates otherwise.  The decision of the Sixth Circuit on Kuehne's direct appeal effectively disposes of virtually all of the grounds for relief presented to this Court by way of Kuehne's original Section 2255 motion.  (Doc. #326-1); *see Kuehne*, 547 F.3d 667.  Accordingly, no material "factual disputes" remain to be resolved through an evidence hearing.

Similarly, given the Court's determination *supra* that Kuehne's ineffective assistance of counsel claims articulated in his original Section 2255 motion (*see* Doc. #326-1 at 4-5) can be denied based on the existing record, Petitioner's suggestion that an evidentiary hearing is necessary to develop the record regarding those claims (Doc. #348 at 11) also is not well taken.  Where the petitioner's allegations are merely conclusory, no hearing is warranted.  *See Huntley v. United States*, Nos. 4:07-cv-56, 4:06-cr-8, 2008 WL 488024, at *3 (E.D. Tenn. Feb. 19, 2008) ("No hearing is required in a section 2255 proceeding if . . . the allegations in the motion are unreasonably vague, conclusory, or incredible . . .") (quoting *Oliver v. United States*, 961 F.2d 1339, 1343 n.5 (7th Cir. 1992)).  To the

extent that Petitioner's ineffective assistance of counsel claims are not subject to

denial based solely on the Sixth Circuit's rejection of the underlying claims

purported to constitute deficient performance, the allegations of Petitioner's

perfunctory Section 2255 motion (Doc. #326-1) are too conclusory to justify

holding a hearing on those unelaborated claims.  The record "conclusively

show[s] that the prisoner is entitled to no relief" on the claims actually before this

Court.  28 U.S.C. § 2255(b).

Furthermore, having determined that no evidentiary hearing is necessary,

the Court concludes that the discretionary appointment of counsel also is not

warranted in these circumstances.  *See* 28 U.S.C. § 2255(g).

**IT THEREFORE IS RECOMMENDED THAT**:

> 1)  Petitioner John David Kuehne, Jr.'s motion to vacate, set aside or correct sentence (Case No. 3:03cr063, Doc. #326) be DENIED with prejudice and DISMISSED in its entirety; and
>
> 2) This matter be TERMINATED on the docket of this Court.

**FURTHER, IT IS ORDERED THAT** said Petitioner's motions for

evidentiary hearing (Doc. #348) and appointment of counsel (Doc. #349) be

DENIED with prejudice.

August 10, 2011             ___s/Sharon L. Ovington_____
                                                 Sharon L. Ovington
                                 United States Magistrate Judge

## <u>NOTICE REGARDING OBJECTIONS</u>

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen [14] days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen [17] days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen [14] days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).